USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 0 9 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA : **INDICTMENT**

    - v. -  : **16 CRIM 542**

JONATHAN ROPER and
FERNANDO SERRANO,

    Defendants.

- - - - - - - - - - - - - - - - - - x

**Judge Pauley**

## COUNT ONE
(Conspiracy to Violate the Anti-Kickback Statute)

The Grand Jury charges:

### OVERVIEW OF THE SCHEME

1. At all relevant times, JONATHAN ROPER and FERNANDO SERRANO, the defendants, were employed by a pharmaceutical company ("Pharma Company-1") that manufactured a fentanyl-based sublingual spray (the "Fentanyl Spray").

2. Fentanyl is a synthetic opioid that is classified as a Schedule II controlled substance and is approximately 100 times more potent than morphine as an analgesic. Because of the risk of misuse, abuse, and addiction associated with prescription products like the Fentanyl Spray, only doctors who have enrolled in a mandated U.S. Food and Drug Administration ("FDA") program and completed necessary training are permitted to prescribe the Fentanyl Spray.

3. The Fentanyl Spray was approved by the FDA in or about

January 2012, solely for the management of breakthrough pain in cancer patients who are already receiving and who are tolerant to opioid therapy for their underlying persistent pain. At all relevant times, the Fentanyl Spray was the only FDA-approved product that Pharma Company-1 had on the market. Pharma Company-1 reported over $300 million in net revenue from the Fentanyl Spray in 2015.

4. In order to market the Fentanyl Spray, among other things, Pharma Company-1 established a program purportedly to educate healthcare professionals about the Fentanyl Spray (the "Speaker Program"). Doctors selected by Pharma Company-1 to act as speakers at these Speaker Programs ("Speakers") were compensated for purportedly providing educational presentations to a peer-level audience of healthcare professionals using a slide presentation that had been preapproved by Pharma Company-1. In reality, however, many of the Speaker Programs that JONATHAN ROPER and FERNANDO SERRANO, the defendants, organized and attended were predominantly social gatherings at high-end restaurants in Manhattan, New York that involved no education regarding the Fentanyl Spray and no slide presentation at all.

5. Many of the Speaker Programs also lacked an appropriate audience of healthcare professionals. In order to make these Speaker Programs appear legitimate, sign-in sheets for these Speaker Programs - including Speaker Programs organized and attended by

2

JONATHAN ROPER and FERNANDO SERRANO, the defendants - were frequently forged by adding the names and signatures of doctors to sign-in sheets who had not, in fact, been present at these Speaker Programs.

6. Repeat attendees were also commonplace at Speaker Programs organized by FERNANDO SERRANO, the defendant. In numerous instances, all of the attendees at Speaker Programs organized by SERRANO had previously attended Pharma Company-1 Speaker Programs. Because all legitimate Speaker Programs required use of the same preapproved slide presentation, there was no educational purpose for healthcare professionals to attend Speaker Programs on a repeated basis.

7. While employed at Pharma Company-1, JONATHAN ROPER and FERNANDO SERRANO, the defendants, were each involved in organizing and attended Speaker Programs for two Manhattan-based doctors ("Doctor-1" and "Doctor-2"), among other doctors. Doctor-1 and Doctor-2 were frequently the purported Speakers at sham Speaker Programs that were social in nature and lacked an educational component. Doctor-1 and Doctor-2 were highly compensated by Pharma Company-1 for acting as Speakers. In 2014, Doctor-1 and Doctor-2 received over $147,000 and $112,000, respectively, in Speaker Program fees. During this same time period, Doctor-1 and Doctor-2 were also two of the largest prescribers of the Fentanyl Spray in the United States. In 2014, Doctor-1 and Doctor-2 prescribed,

3

respectively, over $3 million and over $2 million worth of the Fentanyl Spray that was reimbursed by various private insurance companies, and over $1 million worth of the Fentanyl Spray that was reimbursed by Medicare.

8. JONATHAN ROPER and FERNANDO SERRANO, the defendants, knew that doctors were selected and compensated as Speakers in order to, among other things, induce these doctors to prescribe large quantities of the Fentanyl Spray, and ROPER explicitly instructed the sales representatives that he supervised, including SERRANO, that this was the case.

9. JONATHAN ROPER and FERNANDO SERRANO, the defendants, also provided remuneration to doctors, including doctors who served as Speakers and attended Speaker Programs, that bore no relation to any educational purpose, contrary to Pharma Company-1's written policies and procedures. This illegitimate remuneration, which was in addition to the significant Speaker Program fees paid to doctors to induce them to prescribe the Fentanyl Spray, included paying for alcoholic drinks and meals for doctors, and was typically not reported to the federal government as required by federal law.

### STATUTORY ALLEGATIONS

10. From at least in or about March 2013 up to and including in or about November 2015, in the Southern District of New York and elsewhere, JONATHAN ROPER and FERNANDO SERRANO, the defendants, and

others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(B).

11. It was a part and object of the conspiracy that JONATHAN ROPER and FERNANDO SERRANO, the defendants, and others known and unknown, willfully and knowingly would and did offer and pay remuneration (including kickbacks, bribes, and rebates), directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering a good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

12. In furtherance of this conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. In or about April 2013, JONATHAN ROPER, the defendant, in his capacity as a Specialty Sales Professional ("SSP") for Pharma Company-1, organized and attended a sham Speaker Program in Manhattan, New York, intended to induce Doctor-1 to prescribe the Fentanyl Spray in exchange for compensation as the Speaker.

    b. In or about July 2013, ROPER, in his capacity as an SSP

5

for Pharma Company-1, organized and attended a sham Speaker Program in Manhattan, New York, intended to induce Doctor-2 to prescribe the Fentanyl Spray in exchange for compensation as the Speaker.

c. On or about November 14, 2013, ROPER, in his capacity as a District Sales Manager for Pharma Company-1, sent an email to other Pharma Company-1 employees, including FERNANDO SERRANO, the defendant, instructing them, in substance and in part, that doctors who were Speakers were expected to prescribe the Fentanyl Spray in return for having been selected and compensated as Speakers.

d. On or about May 6, 2014, ROPER, in his capacity as a District Sales Manager for Pharma Company-1, sent an email to other Pharma Company-1 employees instructing them, in substance and in part, that doctors who were Speakers were expected to prescribe the Fentanyl Spray in return for having been selected and compensated as Speakers.

e. On or about October 16, 2014, SERRANO, in his capacity as an SSP for Pharma Company-1, organized and attended a sham Speaker Program in Manhattan, New York, intended to induce Doctor-1 to prescribe the Fentanyl Spray in exchange for compensation as the Speaker.

f. On or about February 4, 2015, SERRANO, in his capacity as an SSP for Pharma Company-1, organized and attended a sham Speaker Program in Manhattan, New York, intended to induce Doctor-1 to

prescribe the Fentanyl Spray in exchange for compensation as the Speaker.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Violation of the Anti-Kickback Statute)

The Grand Jury further charges:

13. The allegations set forth in paragraphs 1 through 9 and 12 of this Indictment are repeated and realleged as if fully set forth herein.

14. From at least in or about March 2013 up to and including in or about November 2015, in the Southern District of New York and elsewhere, JONATHAN ROPER, the defendant, willfully and knowingly offered and paid remuneration (including kickbacks, bribes, and rebates), directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering a good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program.

(Title 42, United States Code, Section 1320a-7b(b)(2)(B), and Title 18, United States Code, Section 2.)

## COUNT THREE
### (Violation of the Anti-Kickback Statute)

The Grand Jury further charges:

15. The allegations set forth in paragraphs 1 through 9 and 12 of this Indictment are repeated and realleged as if fully set forth herein.

16. From at least in or about October 2013 up to and including in or about June 2015, in the Southern District of New York and elsewhere, FERNANDO SERRANO, the defendant, willfully and knowingly offered and paid remuneration (including kickbacks, bribes, and rebates), directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering a good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program.

(Title 42, United States Code, Section 1320a-7b(b)(2)(B), and Title 18, United States Code, Section 2.)

### FORFEITURE ALLEGATION AS TO COUNTS ONE, TWO, AND THREE

17. As a result of committing the offenses charged in Counts One and Two, and Counts One and Three of this Indictment, respectively, JONATHAN ROPER and FERNANDO SERRANO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all property, real and personal, that constitutes or is derived, directly and indirectly,

from gross proceeds traceable to the commission of the said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

18. If any of the above described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____        _____
FOREPERSON      PREET BHARARA
                                            United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JONATHAN ROPER and
FERNANDO SERRANO,

Defendants.

INDICTMENT

16 Cr.

(18 U.S.C. §§ 371 and 2; 42 U.S.C. § 1320a-7b(b)(2)(B).)

PREET BHARARA
United States Attorney.

A TRUE BILL

*signature*
Foreperson.

8/9/16 Fld. Indictment, Case assigned to Judge Pauley.
Pitman, USMJ